Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000355
18-MAY-2018
09:32 AM

NO. CAAP-16-0000355

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DEBBIE S. QUEL, Petitioner-Appellant/Appellant, v.
BOARD OF TRUSTEES, EMPLOYEES' RETIREMENT SYSTEM OF HAWAI'I,
Respondent-Appellee/Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-1308)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Petitioner-Appellant Debbie S. Quel (Quel) appeals from the "Decision and Order Affirming the Final Decision of Appellee Board of Trustees of the Employees' Retirement System of the State of Hawaii [(Board)] and Dismissing Appellant Debbie S. Quel's Appeal" (Decision and Order) and the "Final Judgment" entered on April 13, 2016 in the Circuit Court of the First Circuit[1] (Circuit Court).

On appeal, Quel argues that the Circuit Court erred when it affirmed the Board's denial of Quel's application for service-connected disability retirement benefits because (1) the Board erroneously relied upon an incorrect definition of "occupational hazard" when interpreting Hawaii Revised Statutes (HRS) § 88-79(a) (Supp. 2017)[2] and (2) the Board should have

---

[1] The Honorable Rhonda A. Nishimura presided.

[2] HRS § 88-79(a) provides:

§88-79 Service-connected disability retirement.
(a) Under rules the board of trustees may adopt, upon application of a member, or the person appointed by the
(continued...)

instead relied upon precedent set in <u>Komatsu v. Bd. of Trs.</u>, <u>Emps.' Ret. Sys.</u>, 67 Haw. 485, 693 P.2d 405 (1984) to grant Quel's application.

After a careful review of the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Quel's points on appeal as follows, and affirm the Decision and Order and the Final Judgment.

The Board determined that Quel was not incapacitated due to an "occupational hazard" under HRS § 88-79. As a basis for its determination, the Board relied on the definition of "occupational hazard" contained in Hawai'i Administrative Rules (HAR) § 6-22-2.

The Board may adopt rules that are to be used in the application of the statute. HRS § 88-79(a); <u>see also</u> HRS § 88-28 (2012) ("the board, from time to time, shall establish rules for

---

[2](...continued)
family court as guardian of an incapacitated member, any member who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or <u>as the cumulative result of some occupational hazard</u>, through no wilful negligence on the member's part, may be retired by the system for service-connected disability; provided that:

(1) In the case of an accident occurring after July 1, 1963, the employer shall file with the system a copy of the employer's report of the accident submitted to the director of labor and industrial relations;

(2) An application for retirement is filed with the system within two years of the date of the accident, or the date upon which workers' compensation benefits cease, whichever is later;

(3) Certification is made by the head of the agency in which the member is employed, stating the time, place, and conditions of the service performed by the member resulting in the member's disability and that the disability was not the result of wilful negligence on the part of the member; and

(4) The medical board or other entity designated by the board of trustees certifies that the member is incapacitated for the further performance of duty at the time of application and that the member's incapacity is likely to be permanent.

(Emphasis added.)

2

the administration of the funds of the system and for the transaction of its business.") The Board promulgated HAR § 6-22-1, which states that "[t]his chapter shall govern the procedures for the certifications and findings of the medical board relating to applications for: . . . (2) Service-connected disability retirement under [HRS §] 88-79[.]" The Medical Board found that Quel did not have an incapacity that was "the cumulative result of some occupational hazard." HAR § 6-22-2 defines "occupational hazard" as "a danger or risk which is inherent in, and concomitant to, a particular occupation or particular job, if not a risk common to employment in general." Given the unambiguous text found in HRS § 88-79 and HAR § 6-22-2, the Board, and by extension the Circuit Court, did not err in relying upon the definition of "occupational hazard" contained in HAR § 6-22-2 when reviewing Quel's application for service-connected disability retirement benefits.

Komatsu, upon which Quel relies, is not to the contrary.[3] The Komatsu court, citing Lopez v. Bd. of Trs.,

---

[3]     At the time Komatsu was decided in 1984, HRS § 88-79(a) provided:

Service-connected occupational disability retirement. (a) Upon application of a member, or of the head of his department, any member who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no willful negligence on his part, may be retired by the board of trustees for service-connected occupational disability provided that:

    (1) In the case of accident occurring after July 1, 1963, the employer shall file with the board a copy of the employer's report of the accident submitted to the bureau of workers' compensation;

    (2) An application for retirement is filed with the board within two years of the date of the accident, or the date upon which workers' compensation benefits cease, whichever is later;

    (3) Certification is made by the head of the agency in which the member is employed, stating the time, place and conditions of the service performed by the member resulting in his disability and that the disability was not the result of willful negligence on the part of the member; and

    (4) The medical board certifies that the member is incapacitated for the further performance of duty, that his incapacity is likely to be permanent.

(continued...)

3

Emps.' Ret. Sys., used the following definition of "occupational hazard":

> [To be an occupational hazard] the [disability's] causative factors must be those which are not ordinarily incident to employment in general and must be different in character from those found in the general run of occupations.

67 Haw. at 494, 693 P.2d at 411 (citing Lopez, 66 Haw. 127, 129, 657 P.2d 1040, 1042 (1983)). As this definition is not substantially different from that contained in HAR § 6-22-2, Komatsu does not dictate a different result.

Quel's application for service-connected disability retirement benefits relied on the following injuries: (1) pain in left shoulder and arm; (2) arm and hand swollen; and (3) pain also in right shoulder, arm, and hand. Quel claimed that this was the result of the repetitive use of her hands, arms, and shoulders as a cafeteria helper at an elementary school. Her duties included lifting heavy trap doors, putting things into the oven for breakfast, scooping rice with her left hand, pinching dough, peeling potatoes, cutting vegetables, opening cans with old-fashioned can openers, serving meals to students, cooking rice in oven, emptying vegetables and other foods out of pots used to make stew, and performing custodial-type work.

After a contested case hearing, the Hearing Officer determined that Quel was permanently incapacitated "due to the cumulative effects of work related activities[,]" but nevertheless concluded that the repetitive work activities did not equate to an "occupational hazard." Citing Lopez, the Hearing Officer held that "[Quel] failed to introduce evidence that the lifting requirements were 'different in character' from those in the general run of occupations..." The Hearing Officer also held that "[Quel] had the burden to introduce evidence that her work related problems were limited to a relatively few number

_____

³(...continued)
Komatsu, 67 Haw. at 487 n.1, 693 P.2d at 407 n.1 (emphasis added.) Thus, although some of the technical language in HRS § 88-79(a) has changed since Komatsu was decided, the requirement that the petitioner may show he or she had been "permanently incapacitated for duty . . . as the cumulative result of some occupational hazard" remains unchanged.

of occupations, but she failed to do so."[4]  The Board adopted the Hearing Officer's Recommended Decision.

We agree.  Quel failed to prove that her conditions were "not ordinarily incident to employment in general" and were "different in character from those found in the general run of occupations."  See Lopez, 66 Haw. at 129, 657 P.2d at 1042. Thus, the Board, and by extension the Circuit Court, did not err in denying Quel's application for service-connected disability retirement benefits.

Based on the foregoing, the "Decision and Order Affirming the Final Decision of Appellee Board of Trustees of the Employees' Retirement System of the State of Hawaii and Dismissing Appellant Debbie S. Quel's Appeal" and the "Final Judgment" both entered on April 13, 2016, by the Circuit Court of the First Circuit, are affirmed.

DATED:  Honolulu, Hawai'i, May 18, 2018.

On the briefs:

Dan S. Ikehara,
for Petitioner-Appellant/
Appellant.

Patricia Ohara,
Brian P. Aburano, and
Elmira K.L. Tsang,
Deputy Attorneys General,
for Respondent-Appellee/
Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[4]
§ 6-23-31 **Burden of proof.**  Except as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence and the burden of persuasion. The party having the burden of proof shall proceed first in the presentation of opening statements, evidence, witnesses, and arguments, followed by the other party. The degree or quantum of proof shall be a preponderance of the evidence.